H. A. Morgan et al. v. Maggie E. Butler et al.

Decided April 4, 1900.

1. **Trespass to Try Title—Land Certificate—Circumstantial Evidence of Title Held Insufficient.**

In trespass to try title it appeared from the records of the General Land Office that intervener's ancestor applied for the duplicate headright certificate by virtue of which the land in controversy was located, making the advertisement and proof thereof and an affidavit that he was owner of the lost original certificate, and the duplicate was thereupon issued in the name of the original grantee. It was not shown that the ancestor received the duplicate, or located it, or took out the patent, or paid taxes on the land, or ever took possession thereof or claimed it, although he lived for twenty-five years after the time of such application. Held that the circumstances did not make a showing of title in intervener sufficient to warrant the court in submitting his claim to the jury, and that a verdict was properly instructed against him.

2. **Evidence of Heirship—Self-Serving Declaration.**

Upon an issue as to the identity of the original grantee in the headright certificate by virtue of which the land in controversy was located and patented, evidence of a declaration by one, since deceased, claiming to be a brother of the grantee, made after the grantee's death, to the effect that the grantee came to Texas about the time the certificate was granted, was properly excluded as a self-serving declaration, it appearing that the declarant was then an heir of such grantee. Following Byers v. Wallace, 87 Texas, 503.

3. **Same—Identity—Declarations.**

The declaration of a person whose identity is in issue may be given in evidence to prove his identity where it appears that he is dead, or from the circumstances such an inference could be drawn.

Appeal from Coryell. Tried below before Hon. Marshall Surratt.

*T. C. Taylor,* for appellants.

*McDowell, Sadler & Arnold* and *Hefley, McBride & Watson,* for intervener.

*Edward W. Roberts* and *Owens Miller,* for appellees.

JAMES, CHIEF JUSTICE.—An action of trespass to try title to a tract of 1000 acres patented to James S. Butler. The plaintiffs, Maggie E. Butler and others, as heirs of James S. Butler, sued H. A. Morgan and others for the survey, and J. R. Fleury intervened, claiming title as against plaintiffs and defendants. The court charged that Fleury had no title, and plaintiffs recovered judgment. Defendants and the intervener appeal.

We shall consider first the assignments advanced by intervener. Substantially the facts are: The land was patented by virtue of a duplicate certificate issued in 1852 by the Commissioner of the General Land Office in lieu of the lost headright certificate No. 144 that had been issued by the board of land commissioners of Milam County to James S. Butler for one-fourth of a league of land some time in 1838. The application for duplicate was made in 1852 by A. B. Fleury, intervener's father, who also made advertisement and proof thereof, and affidavit stating that he was the just owner of the headright certificate of James S. Butler for one quarter of a league of land, issued by the board of land commissioners of Milam County, and that he had never sold, alienated, or transferred the same in any manner; that it was lost, and that, since lost, he had neither known or heard of the same. Upon this proceeding the Commissioner issued the duplicate on December 11, 1852, which recited that, "Satisfactory evidence having been produced of the loss of headright certificate No. 144, class 1st, issued by the board of land commissioners of Milam County to James S. Butler for one-fourth of a league of land, this duplicate will entitle the said James S. Butler to all the benefits granted in said original certificate."

None of the parties have had possession of the land. No connection with the title was shown on behalf of defendants, except the fact that J. D. Giddings, ancestor of some of the defendants, received the patent from the General Land Office in 1854. Plaintiffs' claim of title consists in their being the heirs of James S. Butler, as alleged. Intervener's claim is this: That the facts and circumstances of this case showed him to be the owner of the original and duplicate, or at all events, entitled him to have the question of his ownership submitted to the jury.

We here copy his propositions: "1. Where a person who may have lost a headright certificate issued to another by the board of land commissioners of any of the counties of the State or Republic of Texas, did in 1852 apply to the Commissioner of the General Land Office for, and receive a duplicate of such certificate, by making the proof of advertisement and affidavit and proof of loss and ownership of the original, by fully complying with articles 4122, 4123, and 4124, Paschal's Digest, and to whom, upon such application and showing, the Commissioner

did, in 1852, issue a duplicate certificate, becomes the owner of the duplicate, and entitled to the same number of acres of land as was conferred by the original certificate, and becomes the owner of the land upon which such duplicate was located and patent issued and it makes no difference that the Commissioner may have issued the duplicate certificate in the name of the original owner, and not the claimant, or party who applied for the duplicate, said duplicate certificate having been located upon the land in controversy, and the patent upon its face showing that it was issued and based upon said duplicate certificate, and there being no indication of fraud, and nearly half a century of time having elapsed, and the matter never having been questioned, a prima facie case of a right to recover the land is made out in favor of the heir of the party who obtained such duplicate, as against trespassers showing no title, and as against the heirs of the grantee of the original lost certificate, who make no claim nor attempt to show that it had not been lost, nor that the person who applied for the duplicate was not the owner.

"2. If the foregoing proposition be not sound, it is nevertheless true that the facts and circumstances therein set out entitled this appellant to at least have the question submitted to the jury as to whether his ancestor, A. B. Fleury, was or was not the owner of the original certificate and the duplicate issued in lieu of it. And also, these papers, affidavits, etc., asserting ownership in said Fleury, were found in the proper custody, and were more than thirty years old and free from suspicion.

"3. These facts being uncontroverted, the court should have instructed the jury to find for this appellant, and it is proper to reverse and render the case for him.

"4. The action of the Land Commissioner under articles 4122, 4123, and 4124, Paschal's Digest, and within the scope of his authority as therein given, is conclusive proof of the truth of the evidence upon which he acted, and of the facts necessarily found by him to be true as a basis for his action."

We are unable to agree with the first, third, and fourth propositions, so far as they contend that a prima facie case of title was shown.

As to the second, we agree with it so far as it asserts the principle that a transfer of the certificate may be proven by circumstances, and in a proper case such issue should be submitted to the jury. Upon such question it is proper always for the court to look to the circumstances that are presented, and determine whether or not they are of such probative character as will reasonably warrant the submission. This court has had occasion to consider this mode of proving title. Texas Tram and Lumber Co. v. Gwin, and cases cited, 52 S. W. Rep., 111.

The matters here claimed as circumstances may be stated as follows: The acts done by Fleury in causing the duplicate to be issued, this involving his claim of being the owner of the original, his affidavit to that effect, his recognition by the Commissioner in acting upon his application, etc.; the nonassertion of title by any person through the original grantee, until about the time this suit was brought; their failure for

so long a time to question the acts of Fleury in procuring the issuance of the duplicate in the character of owner thereof; their adoption of his act in asserting title to the duplicate; their failure to produce the original certificate, or patent, and failure to account for either; proof by intervener that the papers of his father, among which the original patent likely was, had been destroyed; and the failure of plaintiffs to pay taxes upon the land, or to go into possession of it.

The above are substantially the circumstances enumerated in intervener's brief. They amount simply to this: That intervener's father, claiming to be the assignee of the original certificate, moved before the Commissioner of the General Land Office for the issuance of a duplicate thereof, and nothing more. It is not shown that Fleury ever did another act in reference to the certificate or the land located by it. It was not shown that he located the land, received the duplicate, or took out the patent; or that he ever paid taxes on the land, except that intervener testified that his father told him he had paid taxes on land in Coryell County, or took possession of it, or asserted any ownership over it, although he was shown to have lived until about 1877, the land having been patented in 1854. On the contrary, it appears that another person, not shown to be connected with Fleury, received the certificate in December, 1852, and that the patent was taken out by J. D. Giddings, the ancestor of some of the defendants, in 1854. It appears that Butler died about 1848. The fact that Butler's heirs may not have taken any action in reference to this land, would not be a circumstance in aid of interevener's claim, when it was not shown that Fleury himself had done more than declare himself the owner of the certificate, in 1852, which declaration he afterwards did nothing to follow up.

The proposition comes to this, that Fleury, by assuming in 1852 the position of owner of the original headright in the proceeding in which the duplicate was issued (to James G. Butler), should now, by mere lapse of time, unaided by any acts of ownership, be declared the owner of the certificate in accordance with such assertion, because no person has since come forward to question it, or to assert a contrary title. We know of no case that has gone to this length in indulging proof of title by circumstances, and we are not ready to do so. We think the court did not err in its ruling as to the intervener.

The errors assigned by defendants will now be considered. The second is that there was error in permitting plaintiff to read in evidence certain testimony of Mrs. Maggie Butler, to wit, that Elijah Butler told her that he had a brother whose name was James S. Butler, who came to Texas in 1834, or about that time. The objection was that Elijah Butler stood in the position of heir of James S. Butler, and his declarations were incompetent, citing Byers v. Wallace, 87 Texas, 503. It is called to our attention that the witness testified without objection that she had heard her husband, a son of Elijah Butler, speak of his uncle, James S. Butler, who he said had gone to Texas many years ago. But there was no testimony, except her knowledge through the declaration

of Elijah Butler, that James S. Butler, the brother of Elijah, came to Texas about 1834, and the question must necessarily be passed on whether or not the fact could be shown by Elijah's statement. Its importance in identifying the James S. Butler to whom the headright was granted, with the James S. Butler of whom plaintiffs were heirs, can not be denied, because the record relating to the headright certificate shows that the person in whose favor it issued was here in 1833 or 1834. We are satisfied the declaration was inadmissible. The testimony is that Elijah Butler, the declarant, now dead, was a brother of the James S. Butler under whom plaintiffs claim to be entitled, and upon the latter's death would be one of his heirs. There is evidence that James S. Butler, the grantee of the certificate, died in 1848, and that is plaintiffs' contention. The declarations of Elijah were made to Maggie Butler, his son's wife, who testified she was born in 1848. Consequently it was, according to plaintiffs' own theory, long after descent was cast upon Elijah that he made the declaration. It was inadmissible according to the ruling in Byers v. Wallace, supra. We refer also to Underhill on Evidence, section 113, for a full statement of the rule and reasons therefor. This necessitates a reversal of the judgment. This decision is not to be confused with matters of general repute in the family, and relates only to individual statements. In view of what has been said, we think it unnecessary to discuss the third assignment.

The fourth and fifth assignments complain of testimony of the witness McLean, in being allowed to depose as follows: "He [referring to the James S. Butler he knew] told me he came from South Carolina." Also, "He told me himself he was a single man." The objection was that this testimony was hearsay, it not being shown that the declarant was dead, or that the witness was related to him. The testimony of Welch as to the Jim Butler he knew and that of McLean as to the James S. Butler he knew, though not in all respects clearly identifying the same individual, are in accord sufficiently to warrant the conclusion that they refer to the same person, when the age of the witnesses, the great lapse of time and imperfections of memory are considered. Welch testified that Jim Butler was killed in San Antonio in 1848; therefore that ground for the objection is not valid. If it was shown that he was dead, or from the circumstances such an inference could be drawn, as we think it could be upon the evidence in this case, these declarations were admissible. Gillette, Ind. and Coll. Ev., sec. 143; Byers v. Wallace, 87 Texas, 503.

There is nothing in the sixth assignment of error. It is not a proper assignment, as it embraces more than one subject or proposition. Insurance Co. v. Chowning, 86 Texas, 654. Besides, the matter will not probably arise again.

The only other assignment is the first, which is that plaintiffs' proof is insufficient to support the verdict. Without expressing any views upon the testimony, we shall merely state that we think this assignment not well taken.

The judgment against intervener will be affirmed, and the judgment in favor of plaintiffs will be reversed and the cause remanded.

*Affirmed as to intervener.*

*Reversed and remanded as to defendants.*