### WOLF v. WILHELM et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1912. On Motion for Rehearing, April 3, 1912.)

1. EVIDENCE (§ 271*) — SELF-SERVING DECLARATIONS.

Declarations by a deceased heir of relationship, adverse to another heir, are self-serving.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079; Dec. Dig. § 271.*]

2. EVIDENCE (§ 297*)—HEARSAY—PEDIGREE.

Written declarations of a decedent as to his pedigree are admissible to prove his identity and lineage.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1154; Dec. Dig. § 297.*]

3. EVIDENCE (§ 292*) — HEARSAY—PEDIGREE DECLARATIONS.

To make declarations of an heir admissible as to his pedigree, declarant must be dead when they are offered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1151; Dec. Dig. § 292.*]

4. EVIDENCE (§ 290*)—DECLARATIONS—RELATIONSHIP — DECLARATION BY MEMBERS OF FAMILY.

Questions of pedigree, such as marriages, births, and deaths constituting family history, may be shown by declarations of members of the family.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1149; Dec. Dig. § 290.*]

5. EVIDENCE (§ 295*)—DECLARATIONS—PEDIGREE—TIME OF MAKING DECLARATIONS.

Declarations as to pedigree must be made ante litem motam, though the fact that they are repeated after the dispute arose does not make them inadmissible if made theretofore.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1153; Dec. Dig. § 295.*]

6. EVIDENCE (§ 297*) — DECLARATIONS—PEDIGREE DECLARATIONS.

An affidavit of a deceased heir as to his family history may be admitted in evidence, as well as oral declarations as to pedigree.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1154; Dec. Dig. § 297.*]

7. EVIDENCE (§ 291*) — DECLARATIONS—PEDIGREE.

Declarations by a decedent as to pedigree should not be admitted in evidence when the same facts may be shown by the testimony of living witnesses.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1150; Dec. Dig. § 291.*]

8. TRESPASS TO TRY TITLE (§ 36*)—ABSTRACT OF TITLE—CONTENTS.

Rev. St. 1895, art. 5260, providing that either party, in trespass to try title, may demand an abstract in writing of the claim or title to the premises upon which the other party relies, and in default thereof no evidence of such claim or title shall be given on trial, only requires the abstract to show the party's own chain of title, and it need not contain evidence which only tends to destroy his adversary's title, so that defendant's abstract was not required to contain the proceedings by which the decree under which plaintiff's claim was set aside, in order to admit evidence of such proceedings.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 38; Dec. Dig. § 36.*]

9. WITNESSES (§ 159*) — DECLARATIONS OF DECEDENT.

In trespass to try title, by one not an administrator, to recover land originally patented by defendant's father, in which defendant claimed as heir and legatee of his father, evidence by defendant as to transactions and conversations with his father were not rendered inadmissible by Rev. St. 1895, art. 2302, providing that in actions by or against administrators neither party shall testify as to any transaction with or statement by intestate unless called to testify by the opposite party, and that the article should extend to actions against heirs of a decedent arising out of a transaction with decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 664, 666, 669, 671–682; Dec. Dig. § 159.*]

10. TRESPASS TO TRY TITLE (§ 39*) — ABSTRACT OF TITLE.

Under an abstract of chain of title filed by defendant in trespass to try title, pursuant to Rev. St. 1895, art. 5260, stating that he claimed under the 3, 5, and 10 year limitations, he could testify that he and his father, under whom he claimed, rented the land by written lease.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. § 39.*]

11. ADVERSE POSSESSION (§ 25*)—HOLDING BY TENANTS.

It is immaterial whether tenants held under a written or a verbal lease to make their

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

holding available to the lessor as an adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 116–120; Dec. Dig. § 25.*]

**12. EVIDENCE (§ 159*) — BEST EVIDENCE — PURPOSE OF WRITING.**

While the instrument itself would be the best evidence of the contents of a written lease, since it was immaterial whether a tenant held under a written or verbal lease to make his holding available to the lessor as adverse possession, it did not violate the best evidence rule to show, for the purpose of establishing the adverse possession by the tenant that the tenant held under a written lease.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 471, 474; Dec. Dig. § 159.*]

**13. APPEAL AND ERROR (§ 499*) — BILL OF EXCEPTIONS.**

Error in admitting evidence will not be reviewed, where the record does not show that the point was reserved by bill of exceptions or that appellants objected to its admission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2299; Dec. Dig. § 499.*]

**14. TRESPASS TO TRY TITLE (§ 25*)—LIMITATIONS—EQUITABLE CASE.**

While under the statutes an equitable title is as available to plaintiff in trespass to try title as a legal title, an action to establish such title was barred in four years after the right of action accrued.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. § 25.*]

**15. PUBLIC LANDS (§ 178*)—AFTER-ACQUIRED PROPERTY.**

The rights of a patentee under Law Feb. 1, 1854, Sayles' Early Laws, vol. 2, p. 331, directing the land commission to issue patents to any number of certain colonists for lands surveyed in the colony under legal certificates issued to them under any previous enactments, did not pass by his conveyance before the issuance of the patent under a certificate dated 1848, where such conveyance did not contain a general warranty clause.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

*On Motion for Rehearing.*

**16. EVIDENCE (§ 295*)—DECLARATIONS—PEDIGREE DECLARATIONS.**

Though a witness did not know, when she made statements as to her heirship and relationship to her attorney, employed by herself and brothers to recover land claimed by them as heirs in a certain colony, that the particular land in question belonged to the estate of which she claimed to be an heir, evidence of her declarations by the attorney was not admissible, since the heirship claimed was to any land of the ancestor and had been cast upon her when the declarations were made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1153; Dec. Dig. § 295.*]

Appeal from District Court, Menard County; Clarence Martin, Judge.

Action by Charles Wolf against Frank Wilhelm and others, in which part of defendants filed a cross-answer. From a judgment for defendants, plaintiff appeals. Affirmed.

Sidon Harris, of Austin, for appellant. W. S. Ryan, of Indianapolis, Ind., and Moursund & Moursund, of Fredericksburg, for appellees.

COBBS, J. This suit was filed in the district court of Menard county on April 17, 1906, by Chas. Wolf against Frank Wilhelm in trespass to try title to recover survey No. 164 containing —— acres in Menard county, patented to Ludwig J. Sahm. Wilhelm answered "Not guilty" and pleaded the three, five, and ten years' statute of limitations and vouched his landlord in. Defendants Albert Sahm et al. as heirs of Ludwig J. Sahm, adopted Wilhelm's answer as theirs, and by cross-answer prayed for affirmative relief, claiming the title to the land. After hearing the evidence, the court directed the jury to return a verdict for defendants, and rendered judgment in accordance.

Appellant's first assignment of error complains of the action of the court in excluding affidavit of Mrs. Amelia P. Withrow, deceased daughter of H. F. Fisher, deceased, made in 1899, 10 years before her death, in which she sets forth the history and genealogy of her family, offered to prove the marriage and deaths of her parents, and the births, marriages, and deaths of their children. The second assignment complains of the action of the court "in excluding the testimony of Sidon Harris, giving in evidence the conversation he had in 1887 with Mrs. Amelia P. Withrow, now deceased, daughter of H. F. Fisher, in which conversation the said Mrs. Withrow gave the history and genealogy of her family, which evidence was admissible to prove the marriage and deaths of her parents and births, marriages, and deaths of their children." These two assignments are considered together, and appellant's proposition thereunder is as follows: "The excluded evidence of Sidon Harris shows that Amelia P. Withrow, who was a daughter of H. F. Fisher, died in 1909. The affidavit of the said Mrs. Withrow, made in 1899, gives the date of the marriage of her parents and the dates of their deaths and the names, births, marriages, and deaths of their children. The excluded evidence of Sidon Harris also shows: That the said Mrs. Withrow stated to him, in a conversation in 1887, that according to her family history, her father, H. F. Fisher, married a widow, Mary C. Kessler, who had one child, Julia, who afterwards married a Mr. Loeffler. That her said parents married in 1845, in Houston, Tex., and had children as follows, namely: Carrie, who married J. C. Chew; Mary, who married Byron McKeen; Henry, who died in infancy; herself, Amelia Pauline, who married R. F. Pannell in 1871, who died in 1881, and she married W. B. Sorley in

1882, and was divorced from him in 1888, in which year she married G. B. Withrow; the other child of her said parents is also Henry F. Fisher, who lives in Houston, Tex. That Carrie became insane in 1870, and has remained so. That her father died in Europe, intestate, in 1867, and her mother died testate in 1879. The testimony of said witness also shows that at the time of said conversation neither he nor Mrs. Withrow had any knowledge of the land in controversy, and had no litigation pending involving any issue of heirship of Henry F. Fisher, deceased. The appellant proved title to the land in controversy under the said heirs of Henry F. Fisher. Therefore the affidavit of Mrs. Amelia P. Withrow, as well as the testimony of the witness Sidon Harris, were clearly admissible for the purpose of proving the heirship of the said Henry F. Fisher, deceased."

The accuracy of the statement of facts contained in appellant's proposition are nowhere challenged. But appellees contend, in the first counter proposition, that the affidavit of Mrs. Withrow was a self-serving declaration made in view of pending litigation, in which she claimed an interest, and second, as to the heirship of Burchard Miller, was purely hearsay. And the second proposition presents same objection in effect to the testimony of Sidon Harris, with the further reason he was a warrantor under whom plaintiffs claim title, and interested.

[1, 2] Declarations made by one deceased heir of relationship adverse to another heir comes under the class of self-serving declarations. Declarations of deceased parties in writing are admissible as to heirship. Such declarations are admissible upon issues involving pedigree, as tending to prove the identity and lineage of the declarant. Byers v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760.

In the case of Nunn v. Mayes, 9 Tex. Civ. App. page 371, 30 S. W. page 482, Justice Head, speaking for the court, said: "To prove pedigree, hearsay evidence is admissible when based upon information derived from deceased relatives of the party in question or from family history, etc.; but it must come from one or the other of the well-recognized sources to relieve it from the general rule. In this case the witness clearly shows that he is testifying to matters, his knowledge of which must have been derived from others, and in order to have made his statements in reference thereto admissible, the sources of his information should have been disclosed."

[3] In order to make such declarations admissible, declarant must be dead at the time. "Evidence to prove the making of the declaration may be received from any one who heard it made, and this kind of evidence does not come within the definition of hearsay." Nehring v. McMurrian, 94 Tex. page 51, 57 S. W. page 945.

In Jamison v. Dooley, 98 Tex. page 210, 82 S. W. page 781, the court said: "We incline to think the declarations of Maria Jamison, Allen Jamison, and Nelson Jamison should have been excluded. The declarations were self-serving as to them. If their declarations were true, they had an interest in the land."

[4] Questions of pedigree, such as marriages, births, and deaths of members of a family, making family history, may be proven by declarations of the members of a family, which go to make family tradition and history. Such testimony generally comes down in family talk, discussing such matters among themselves, handing down the family history. Such is the experience of every family, and made generally without regard to any selfish interest regarding property rights, where bias and prejudice might creep in to control.

[5] In Gorham v. Settegast, 44 Tex. Civ. App. page 262, 98 S. W. page 667, the court says: "Such declarations, however, must have been made ante litem motam, for if made during the course of a controversy they are regarded as lacking in the ground of trustworthiness. * * * It is not necessary that litigation should actually have begun at the time of the declarations. The element to be avoided is a bias in the mind of a declarant; and this is sufficiently probable if a dispute or controversy is actually in progress, even though it may not have reached the stage of legal proceedings. 2 Wigmore on Ev. §§ 1482, 1483. It is the declarations which must be made ante litem motam, not the statement of those who heard them, that are evidence. If made before, the fact that they are repeated after the dispute arose does not render them inadmissible."

The record is mutilated to the extent of having lines drawn around part of the bill of exception containing affidavit of Mrs. Withrow, and marked, "Omit." This must have been done since record was made up. The part marked to be omitted seems to apply to that portion of the affidavit pertaining to Burchard Miller. Still, the entire affidavit seems to have been offered and excluded, so we will not further notice the lines and words written on the margin of the record.

The entire affidavit, dated November 23, 1899, was offered in connection with testimony of Sidon Harris, who recites the same facts as given in the affidavit to him in the summer of 1887. Mr. Harris, among other things, stated Mrs. Withrow told him that her father, Henry Fisher, and her mother, Mary C. Fisher, were married in Houston, Tex., in 1845; that her mother at that time was a widow Kessler with one child, Julia, who afterwards married a Mr. Loeffler. The testimony of Mr. Harris showed that Mary McKeen was living at the time; that Henry F. Fisher was living at the time. The former he could not trace, and the latter was traveling in Europe. He makes no showing as to

Mrs. Loeffler, who doubtless also knew the family history of the Fishers. Mr. Harris stated: "When I first had conversation with Mrs. Withrow, or rather with Mrs. Sorley, as she was then, in which she told me of her family history, I had no suit for her in which it was necessary to prove up heirship. The only suits I had for her then were for lands which had been allotted to her in partition of her parents' estate in 1875. Neither she nor I knew anything about the land in controversy in this suit until about 1894 or 1895. I do not know where the children of B. Miller are."

Taking the statement of Mr. Harris, the declaration was made without reference to pending litigation and before Mrs. Withrow had any idea of her interest in the land in controversy; but the affidavit was in fact drawn at a time when she did not know of the interest in the land. But the testimony of Mr. Harris brings the declaration within the rule announced in Gorham v. Settegast, supra: "It is the declarations which must be made ante litem motam, not the statement of those who heard them that are evidence. If made before, the fact that they are repeated after the dispute arose does not render them inadmissible." We believe the testimony would be admissible but for the fact it appears the same proof could be made by living witnesses, and we are not satisfied but what the entire testimony was excluded for this reason. In other words, the testimony of Mr. Harris shows a living sister and brother and a half-sister of Mrs. Withrow, by whom the same proof might have been made.

[6, 7] There is no reason why the affidavit of a deceased heir, as to family history, properly accredited and identified as a member of the deceased family, may not be used, as in this case, to prove the declaration; but we do not think this character of hearsay testimony should be used when the same facts may be shown by living witnesses produced on the trial in person or by deposition to pass the ordeal of a cross-examination. And we overrule the assignments.

The third assignment complains of the court in excluding a decree offered by plaintiff in the district court of Travis county, Tex., January 2, 1906, in favor of the plaintiff against the appellant for the land in controversy in this case.

[8] Plaintiff claimed title under that decree, Cause No. 23,158, Chas. Wolf v. Ludwig J. Sahm et al., and, being demanded to file abstract of title, embraced the said decree therein as vesting title. On the trial of said cause, the defendant, without embracing same in his abstract of title which he was required to file, introduced proceedings from the district court to the effect the said judgment was set aside, upon proper service upon the parties, and thereafter a plea of personal privilege was sustained, and said cause transferred to the district court of Menard

county for trial. An appeal from this order of the court was taken to the Court of Civil Appeals for Third Supreme Judicial District (55 Tex. Civ. App. 564, 120 S. W. 1114, 121 S. W. 561), and judgment of the court affirmed. Certified copies of all such orders, including the mandate of the Court of Civil Appeals, were introduced in evidence by appellee to explain said decree, and appellants duly excepted and tendered a bill of exception to the court for approval. Whereupon the court made the following qualification thereupon: "Approved with qualification that the instruments referred to were not offered by defendants as muniments of title, nor for the purpose of deraigning title under same."

Article 5260, R. S., provides for filing demanded "abstract in writing of the chain of title to the premises in question upon which he relies." Article 5261, R. S., provides: "In default thereof, no evidence of the claim or title of such opposite party shall be given on trial." This statute has been construed in Hayes v. Groesbeck, 69 S. W. 237.

It is very clear from the statute that its purpose is to require the abstract of both parties when demanded to exhibit only thereon the chain of title to the premises, but not to any fact that would by proof aliunde of a record title defeat the effect of any link in the chain of title. For instance, where any such deed may be attacked for forgery, such intention is not required to be embraced in the abstract, is provided for in another provision (article 2312, R. S.), which requires the filing of an affidavit. In other words, the statute which gives the right to a litigant to have his opponent exhibit his title, whether in writing or otherwise, that title shall be exhibited, but in no sense requires one to file his offensive evidence that only tends to rebut, destroy, and annul his adversary's title, but upon which in no sense does he rely to support his own title. We think the evidence was admissible to show the judgment had been vacated and was in fact no judgment, since it had been annulled and set aside. The appellant could not hold under it, and it was proper to show that such pretended judgment in fact had no legal existence.

All the assignments on the subject are overruled.

[9] This now brings us to the sixth assignment, complaining of the action of the court in admitting part of the depositions of Albert Sahm in respect to testimony, with reference to transactions, dealings, and conversations had with his father, L. J. Sahm, deceased, under whom the witness claimed to own the land in controversy as heir and as legatee; and because statements were self-serving and hearsay testimony. We think the testimony was admissible and was not repugnant to article 2302 of Revised Statutes.

[10] The seventh assignment complains of the action of the court in allowing appellee

Albert Sahm to testify he and his father rented the land to various tenants by written lease, producing only two: First, because none of said leases were embraced in appellees' abstract of title; and, second, because the nonproduction of the leases not produced was sufficiently accounted for to admit of secondary evidence. This assignment embraces two propositions, and statement nowhere shows where point was saved by bill of exception.

The second paragraph of the abstract of title, filed by appellee, is as follows: "Defendants Louis Sahm, Siegfried Sahm, Pauline Fleury, Louise Scheibitz, Rosa Stechan, Malinda Krull, and Albert Sahm claim and assert title to said land as children and only heirs of Ludwig J. Sahm and wife and as the devisees of Ludwig J. Sahm, both deceased, as appears from deposition of Albert Sahm filed herein November 5, 1906, and defendant Frank Wilhelm as tenant of said Sahm heirs."

Then, in the third paragraph, again says: "Said defendants Louis J. Sahm, Siegfried Sahm, Pauline Fleury, Louise Scheibitz, Rosa Stechan, Malinda Krull, and Albert Sahm, and said Frank Wilhelm as their tenant, claim and assert title to said land under the three, five, and ten years' statutes of limitations."

If required to so state, we think this sufficiently complies with the statute, and appellant has notice of the fact that one of the material defenses is by virtue of the statute of limitations of three, five, and ten years, and part of such holding is by tenants.

[11, 12] We do not understand that it in point of fact makes any difference whether one's tenants hold from his landlord by verbal or written lease. The form of holding is immaterial. The question is one of continuous, open, hostile and adverse occupation, claim, and use. So there is no violation of any rule of evidence to state a tenant is there under a verbal or a written lease. A question might arise if the evidence were offered to state the contents of a written instrument. That would not be the better way to prove its contents, because the instrument itself, if susceptible of production, would be the better evidence. Hence we hold there was no error committed in allowing witness to state leasing the lands was by written instruments, for that fact was of no consequence, but it was important to show possession of the claimant through himself and agents.

It was shown, however, that the attorney for appellee made inquiry and search for the leases and failed to find same. Albert Sahm testified he attached to his deposition all the leases he could find, which were themselves on file. In Howard v. Britton & Co., 71 Tex. page 288, 9 S. W. page 74, the court says: "But the terms of the lease were not necessarily in issue, and it may be shown by parol that a writing exists, one has been transferred, without producing the writing itself, or without accounting for its nonproduction; the object being to prove these facts, and not the contents of the writing."

In Cobb v. Robertson, 99 Tex. page 145, 86 S. W. page 748, 122 Am. St. Rep. 609, the court says: "A contract of leasing or renting is not essential to the holding possession by one for another. If the tenant enter under the title of another and hold by permission, or at sufferance, he is estopped to deny such title, and the possession, in law, is that of the owner. The authorities to be cited abundantly show this. The nature of the arrangement by which the possession is taken or held is immaterial to such an inquiry as this."

We overrule all the several assignments bearing on the subject.

The ninth assignment of error complains of the action of the court in admitting in evidence an examined copy of an instrument claimed to be a report by H. F. Fisher as agent for the Texas & German Emigration Company in 1855 because: First, the same was not embraced in appellees' abstract of title; and, second, the nonproduction of the original was not properly accounted for to admit of secondary evidence thereof.

Here again we have two propositions embraced in one assignment of error.

[13] We are nowhere referred to the record to show that the supposed error was reserved by proper bill of exception, or that any such testimony was introduced over appellant's objection, and we decline to consider the same.

For the same reason we overrule the tenth assignment of error, complaining of the action of the court in allowing appellee to introduce in evidence copy of a petition from the district court of Travis county filed in 1854 by H. F. Fisher, as agent for the German Emigration Company, or the Guadalupe, Lavaca & San Saba Railway Company, for the use of the Texas & German Emigration Company, because same was not embraced in appellees' abstract of title. This ground has been discussed above, and shown, inasmuch as the proposed evidence was not introduced nor relied upon for title in any particular, it was not required to be exhibited in an abstract of title.

The eleventh assignment of error is as follows: "The court erred in directing a verdict for the appellees, because the appellant's testimony shows that L. J. Sahm, the original grantee and patentee of the land in controversy, conveyed the same to the German Emigration Company, which was also known as the Guadalupe, Lavaca & San Saba Railway Company, and as the German Emigration & Railway Company, and as the Society for the Protection of German Emigrants to Texas, by deed dated August 17, 1846, and July 13, 1855, and that the appel-

lant holds title to said land under said conveyances and under said company, and therefore was entitled to the submission of the case to the jury under appropriate instructions upon the issues in the case."

. The twelfth assignment of error complains of the action of the court in refusing to let the case be submitted to the jury under appropriate instructions.

The thirteenth assignment is to the same effect, contending appellant was entitled to the land and the court erred in the peremptory instruction to the jury.

Ludwig J. Sahm, on the 17th day of August, 1847, conveyed to the German Emigration & Railroad Company one-half of 640, being 320, acres to which he had a claim as one of the emigrants introduced as a colonist under a certain contract of colonization between the government of the Republic of Texas and Henry F. Fisher and B. Miller, dated the 1st of September, 1843, and by the latter assigned and transferred to the German Emigration Railroad Company the rights of the said Sahm, being "entitled to a conditional grant of 640 acres of land." The right of Sahm by his acceptance was "upon the terms and conditions in the said colonization contract set forth and contained." The terms of the said contract was that Fisher & Miller was to cause to be introduced "a colony of six hundred families or single men from white inhabitants of a foreign country, within three years from date of contract, and within said time settle same and have them residing within the limits of the tract of land (describing it). The government was to "give each family introduced and settled within the limits of said tract within time prescribed, one section of land and to each single man one-half section. Titles to same to be extended to them whenever good, comfortable cabin has been built and 15 acres kept in cultivation, under good fence, on the respective sections or half sections for which such emigrant desires title." The contract provided for forfeiture, but did not preclude the emigrant from completing his title.

On the 13th day of July, 1855, Julius Harms, as agent and attorney in fact of Ludwig Sahm, conveyed the western one-half of 640 acres of land granted to Jacob Ludwig Sahm to J. De Cordova, trustee of J. J. Giddings and the German Emigration Company. This instrument was proven up before Chas. Densen, notary public, Bexar county, Tex., by Herman Harms and Ernest Dosch, on February 18, 1905; said proof being as to the signature of C. W. Thomas and Julius Harms and recorded in Menard county May 23, 1905.

The decree introduced by appellant as part of his title and in connection with the foregoing, from the United States Circuit Court, dated April 1, 1851, subrogates Fisher & Miller to the rights of the defendants (not naming them) accruing by virtue of the contracts of Fisher & Miller with the Republic of Texas and agreement of Fisher & Miller with them. Also providing to the extent that, if the premium lands, that Fisher & Miller may secure, should fall short of 250,-000 acres, in order to make up such deficit, they are subrogated to all the rights of defendants. Under the view we take of this case, we do not really think it necessary to discuss the various questions raised as to what title passed to appellants under the German Emigration Company, the proceedings in the United States Circuit, or any of the various instruments introduced by appellant under these on the trial.

If Fisher & Miller acquired the title of L. J. Sahm under those proceedings by reason thereof, still he has failed to prove who the heirs of Henry F. Fisher were and connect themselves with that title through them. Defendant has shown a straight title from the sovereign by a patent dated October 16, 1857, by virtue of a certificate dated June 13, 1848. Appellees, as heirs of L. J. Sahm, and in connection with him, have held continuous adverse possession of said land under the patent for more than 10 years before suit was commenced with improvements and inclosures, claiming it, using it, and enjoying it, and assessed said land for L. J. Sahm for years 1877, 1879, 1881 to 1897 inclusive, 1899, and 1900.

[14] The defendants held possession as heirs under a patent to the land dated October 16, 1857. The plaintiff at no time showed more than an equitable title. While it is true under our statutes and decisions it was just as available as a legal title, yet, if proof be required to establish that equity, it would be barred in four years after the right of action accrued. McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315.

Appellees contend that the claim belongs to that class of cases designated as a stale demand. Whether that contention has any merit since our law has undertaken to employ a direct statute of limitations to govern all possessory actions we need not discuss. But we do believe that after a period of more than 60 years, where the claim is purely an equitable one, and all the parties have passed away who had some knowledge of the transactions and in the absence of a failure not only to not pay any taxes, and promptly assert a claim within an ordinarily reasonable time, but allow the claimants under the legal title to remain in the enjoyment of the property, a better showing should have been made to explain appellant's forbearance than is shown here.

The eleventh assignment sets out appellant's title. It will be seen from the said instruments put in evidence by appellant that Ludwig J. Sahm, as an emigrant with the right to acquire land as a colonist, conveyed an undivided one-half or 320 acres of his right to the German Emigration &

Railroad Company based upon its contractual right with the Republic of Texas and Fisher & Miller to acquire land. There was nothing to show that the company ever complied with its contract or transferred its rights to the German Emigration Company or any rights from Sahm. The appellant likewise claims the west half of the 640-acre tract through the purported power of attorney of Julius Harms as agent and attorney in fact of L. J. Sahm to J. De Cordova, trustee. This instrument was filed in the General Land Office August 30, 1855, not authenticated, was withdrawn November 17, 1860, and proven up by witnesses February, 1905, 45 years afterwards. The title has not been shown to have passed out of De Cordova, the trustee, and in another form, but which does not refer to the same conveyance, but still remained in him by an agreement of J. J. Giddings, the German Emigration Company, by Henry Fisher, and J. De Cordova, dated September 12, 1854. It will be borne in mind that the decree of the United States court under which appellant claims Fisher & Miller acquired land was April 1, 1851, and Harms' power of attorney was dated July 13, 1855. At most, not more than one-half of L. J. Sahm's right to acquire the land or convey it was mentioned in any of the conveyances. So the record shows that De Cordova has never parted with that title, if any passed to him under that purported conveyance. In these grants, the Republic of Texas retained the condition precedent of required settlement.

[15] The law of February 1, 1854, Sayles' Early Laws, vol. 2, p. 331, directed the Land Commissioner to issue patents to any number of Fisher & Miller colonists for lands surveyed within the colony, under legal certificate issued to them under any previous enactments. Now the patent was issued to Ludwig J. Sahm October 15, 1857, by virtue of certificate dated June 13, 1848; therefore his rights under the foregoing law under this patent did not pass as an after-acquired title for the reason none of the claimed conveyances contained a clause of general warranty.

For the reasons stated, we do not believe appellant has shown any title to the land. We have considered all the assignments of error, and overrule them.

The judgment of the court is affirmed.

### On Motion for Rehearing.

JAMES, C. J. We are of opinion that the affidavit of Mrs. Withrow, made in 1899, was properly excluded as evidence. We are also of opinion that the testimony by Sidon Harris of conversations with Mrs. Withrow, wherein she made the statements of heirship to him after he became attorney for her and her brothers and sisters in relation to lands in Fisher & Miller's colony, did not render the declarations which Mrs. Withrow made to him admissible. He stated: "When I first had conversation with Mrs. Withrow, or rather Mrs. Sorley, as she was then, in which she told me of her family history, I had no suit for her in which it was necessary to prove up her heirship. The only suits I had for her then were for lands which had been allotted to her on partition of her parents' estate in 1875. Neither she nor I knew anything about the land in controversy in this suit until about 1894 or 1895."

[16] Henry F. Fisher was then dead, and his children, of whom Mrs. Withrow asserted herself to be one, were vested with title to his estate. It is true that it appeared, from what was testified to by Mr. Harris, that the particular land in question was not then known to be a part of the Fisher estate by either Mrs. Withrow or himself. However, descent had been cast on her as to any property Fisher left. As to such property, whatever it was, she was interested in showing herself to be an heir of Fisher. If her statements were true, she had an interest in the land. Jamison v. Dooley, 98 Tex. 210, 82 S. W. 780.

The testimony of Harris is fairly suggestive of the fact that her declarations to him were made with reference to claims involving heirship from and under Fisher.

We think the rule governing this question is expressed in Morgan v. Butler, 3 Tex. Civ. App. 470, 56 S. W. 689 with reference to authorities there cited.

The affidavit and the testimony of Mr. Harris constituted the sole proof offered of heirship under H. F. Fisher with proof of which plaintiff showed no title, assuming that Fisher had in fact acquired title under the deed or deeds from Sahm, which appellee insists the evidence failed to show. We deem it unnecessary to go into that question. The verdict was properly instructed for failure to prove the heirship aforesaid. It was unnecessary to pass upon the other questions discussed in the main opinion.

Motion overruled.

MOURSUND, J., not sitting.